IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID BURGOS,<br>        Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA, *et al.*,<br>        Defendants. | :<br>:<br>:<br>:    CIVIL ACTION NO. 13-4894<br>:<br>:<br>: |

## MEMORANDUM OPINION

Rufe, J.                                                                                        September 6, 2017

        In his Second Amended Complaint, *pro se* Plaintiff David Burgos alleges that Defendants violated his constitutional rights by holding him in a filthy and overcrowded cell at Curran-Fromhold Correctional Facility ("CFCF").[1] Most Defendants have moved to dismiss, and Plaintiff now seeks leave to file a Third Amended Complaint. For the reasons that follow, Plaintiff will be granted leave to file the Third Amended Complaint, and Defendants' motion to dismiss the Second Amended Complaint will be dismissed as moot.

## I. BACKGROUND

        Plaintiff's allegations stem from his incarceration as a pre-trial detainee at CFCF in 2013.[2] Due to overcrowding, Plaintiff was subjected to a practice known as "triple-celling"— housing three or four inmates in cells designed only for two. As a result, Plaintiff was forced to sleep on unsterilized mattresses placed on cell floors where he was exposed to bodily waste, staph bacteria, and vermin. These living conditions aggravated Plaintiff's pre-existing spinal injury (a herniated disc) and caused him to contract scabies, which spread to cover much of his

---

[1] This case was reassigned to this Court from the calendar of the Honorable Mitchell S. Goldberg in late 2016, shortly before the Second Amended Complaint was filed. While Defendants' motion to dismiss was pending, the parties began discovery, which is not yet complete.

[2] These allegations are taken as true for the purposes of this opinion. Because Plaintiff is *pro se*, his arguments are construed liberally. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). And although they are not, strictly speaking, included in the Third Amended Complaint, the Court takes note of the exhibits attached to the Second Amended Complaint, which Plaintiff references but does not reproduce in the Third Amended Complaint.

body.  Plaintiff filed seven grievances; all were ignored.

At times, Plaintiff was briefly transferred out of three-person cells into two-person cells, but he claims that he was ultimately returned to three-person cells in retaliation for filing grievances.  At one point, Plaintiff was transferred to Cumberland County Prison for about a month, and was ordered to place his personal belongings—family photographs, toothpaste, soap, and food—into storage prior to the transfer.  When Plaintiff returned to CFCF, all of his items had been lost or stolen.

As is relevant here, Plaintiff filed a Second Amended Complaint asserting violations of his Fourth, Eighth, and Fourteenth Amendment rights under § 1983 against the following Defendants:  (1) the City of Philadelphia; (2) former Mayor Michael Nutter; (3) Louis Giorla (the Commissioner of the Philadelphia Prison System); (4) John Delaney (the Warden of CFCF); (5) Michele Farrell (the Deputy Warden and Grievance Coordinator at CFCF); and (6) Corizon Prison Health Services.[3]  Defendants moved to dismiss, and Plaintiff sought leave to file a Third Amended Complaint that adds additional allegations, a claim for First Amendment retaliation, and a state-law claim for conversion based on the loss of his personal property.

## II.   LEGAL STANDARD

Dismissal for failure to state a claim is appropriate if the complaint fails to allege facts sufficient to establish a plausible entitlement to relief.[4]  In evaluating Defendants' motion, the Court "take[s] as true all the factual allegations of the [complaint] and the reasonable inferences that can be drawn from them," but "disregard[s] legal conclusions and recitals of the elements of

---

[3] Because Corizon has been granted permission to file a separate motion to dismiss after the Court rules on Plaintiff's motion to file a third amended complaint, this opinion only concerns the claims against the other Defendants.

[4] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

a cause of action, supported by mere conclusory statements."[5] Instead, to prevent dismissal, a complaint must "set out sufficient factual matter to show that the claim is facially plausible."[6] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7]

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend the complaint should be "freely give[n] when justice so requires." Amendment may be denied as futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted," and is "assessed using the same standard applied in the face of a motion to dismiss under Rule 12(b)(6)."[8]

## III. ANALYSIS

Defendants oppose Plaintiff's motion for leave to amend solely on the ground of futility. Because the Court concludes that amendment would not be futile, Plaintiff will be granted leave to file the Third Amended Complaint, with some limitations set forth below, and Defendants' motion to dismiss the Second Amended Complaint will be dismissed as moot.

### A. Section 1983 Claims

Plaintiff asserts two types of Fourteenth Amendment Due Process claims under § 1983: a "triple-celling" claim that challenges his conditions of confinement at CFCF, and an inadequate medical care claim. The Court begins with the general framework governing § 1983 claims and then proceeds to a discussion of each type of Due Process claim.

"[Section] 1983 provides remedies for deprivations of rights established in the

---

[5] *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

[6] *Fowler*, 578 F.3d at 210 (citation and internal quotation marks omitted).

[7] *Santiago*, 629 F.3d at 128 (citations and internal quotation marks omitted).

[8] *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted).

Constitution or federal laws," but "does not, by its own terms, create substantive rights."[9] "Under [§] 1983, [g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."[10] "There are two ways that a supervisor may be held liable under [§] 1983 for acts committed by his or her subordinates. A supervisor may be liable if they [act] with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused [the] constitutional harm. A supervisor may be liable also if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."[11]

"To establish that supervisors are liable under § 1983 for deliberate indifference to an unconstitutional policy or practice, '[t]he plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the supervisor's failure to employ that supervisory practice or procedure.'"[12] "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the supervisor had done more than he or she did."[13] "A plaintiff must specifically identify the acts or omissions of the supervisors that show deliberate indifference, and suggest a relationship

---

[9] *Torres v. City of Allentown*, No. 07-0934, 2008 WL 2600314, at *2 (E.D. Pa. June 30, 2008) (citing *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979)).

[10] *Peele v. Delaney*, No. 12-4877, 2017 WL 467347, at *3 (E.D. Pa. Feb. 3, 2017) (citation and internal quotation marks omitted).

[11] *Id.* (citation and internal quotation marks omitted).

[12] *Id.* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).

[13] *Brown*, 269 F.3d at 216 (quoting *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

between the 'identified deficiency' of a policy or custom and the injury suffered."[14]

### 1. Triple-Celling Claim

Defendants focus primarily on Plaintiff's triple-celling claim.  Defendants argue that Plaintiff's claim is deficient as pleaded in both the Second Amended Complaint and the proposed Third Amended Complaint because:  (1) Plaintiff fails to allege an underlying constitutional violation; (2) Plaintiff fails to allege individual-capacity claims against the individual Defendants; and (3) Plaintiff fails to allege a *Monell* claim against the City of Philadelphia.

#### a. Constitutional Violation

Defendants first argue that Plaintiff fails to make the threshold showing of a constitutional violation.  Claims by pre-trial detainees challenging their conditions of confinement are analyzed under the Due Process Clause of the Fourteenth Amendment.[15]  A condition of confinement is unconstitutional if it is either "the result of an express intent to punish" or "if it is not rationally related to a legitimate government purpose."[16]  In triple-celling cases, the Court "must look to the 'totality of the conditions' of the specific prison at issue to determine whether triple celling is rationally related to the legitimate government purpose of managing an overcrowded prison."[17]

Plaintiff alleges that he was forced to sleep on an unsterilized mattress in an overcrowded cell and exposed to filth and vermin on a daily basis—a situation made worse by Defendants' failure to respond to his grievances or enforce a routine cleaning schedule.  As a result, Plaintiff contracted scabies and his existing back injuries were aggravated.  Taken as true, these

---

[14] *Peele*, 2017 WL 467347, at *3 (quoting *Brown*, 269 F.3d at 216).

[15] *E.g.*, *Bell v. Wolfish*, 441 U.S. 520, 534-36 (1979); *Hubbard v. Taylor*, 399 F.3d 150, 165-67 (3d Cir. 2005).

[16] *Peele*, 2017 WL 467347, at *2 (citing *Bell*, 441 U.S. at 538-39).

[17] *Id.* (quoting *Hubbard*, 538 F.3d at 233).

allegations plausibly suggest that CFCF's policies "were not rationally related to the legitimate governmental interest of managing an overcrowded prison."[18] Thus, Plaintiff has alleged a violation of his Fourteenth Amendment Due Process rights.

### b. Supervisory Liability Claim Against Delaney, Farrell, Giorla, and Nutter

The individual Defendants (Delaney, Farrell, Giorla, and Nutter) argue that Plaintiff fails to state a claim for supervisory liability. That is true as to Nutter, against whom Plaintiff offers only conclusory allegations consisting of little more than a cursory description of his former responsibilities as mayor.[19]

However, Plaintiff has adequately alleged that Delaney, Farrell, and Giorla were deliberately indifferent to violations of his constitutional rights because they implemented a triple-celling policy at CFCF despite knowledge of its dangers and failed to adopt common-sense remedial measures such as routine cleaning schedules. Plaintiff has also alleged that Delaney and Giorla were aware of his unsanitary and dangerous living conditions based on his multiple grievances and inspections that they were required to sign-off on, and that Farrell provided non-responsive answers to his complaints of bodily ailments. That is enough to state a triple-celling claim under § 1983, as other courts in this District have found.[20]

---

[18] *Peele*, 2017 WL 467347, at *2 (finding that plaintiff alleged deprivation of constitutional rights in similar triple-celling case); *see also Camps v. Nutter*, No. 14-01498, 2017 WL 2779180, at *4 (E.D. Pa. June 27, 2017) (same).

[19] Because Plaintiff has had multiple opportunities to plead claims against Nutter, the claims against Nutter will be dismissed with prejudice.

[20] *See Lopez v. City of Phila.*, No. 13-6571, 2017 WL 2869495, at *5 (E.D. Pa. July 5, 2017) (finding that plaintiff adequately alleged § 1983 triple-celling claim against Giorla and Delaney); *Camps*, 2017 WL 2779180, at *6 (same); *Peele*, 2017 WL 467347, at *3-4 (finding that plaintiff adequately alleged § 1983 triple-celling claim against Delaney and Giorla). The individual Defendants also argue that they are entitled to qualified immunity because the Supreme Court's 2009 decision in *Ashcroft v. Iqbal* called into doubt whether supervisory liability claims are cognizable under § 1983. Doc. No. 54 (Defendants' Response to Plaintiff's Motion for Leave to File a Third Amended Complaint at 5) (citing 556 U.S. at 677-79). As other courts have found, this argument is meritless— *Iqbal* did not abolish supervisory liability. *See Colon v. Michele Farrell Curran-Fromhold Correctional Facility Warden*, No. 15-3378, 2016 WL 3902894, at *3 n.2 (E.D. Pa. July 18, 2016) (explaining that "the Third Circuit rejected the argument that . . . *Iqbal v. Ashcroft* abolished supervisory liability under § 1983," and that instead, "such

### c. Municipal Liability Claim Against the City of Philadelphia

The proposed Third Amended Complaint mentions the City of Philadelphia in its caption, but otherwise includes no express claims against the City. However, Plaintiff has asserted claims against Delaney, Farrell, Giorla, and Nutter in their official capacities, and such claims "generally represent only another way of pleading an action against an entity of which an officer is an agent."[21] Thus, regardless of whether the City is named as a Defendant, the Court must determine whether Plaintiff has plausibly alleged official-capacity claims against the individual Defendants, as such claims are merely another way of holding the City liable.

"[I]n an official-capacity suit," also known as *Monell* claim, "the entity's 'policy or custom' must have played a part in the violation of federal law."[22] "A successful *Monell* claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom."[23] Taken as true and construed liberally, Plaintiff alleges that the City had a policy or custom of housing pre-trial detainees at CFCF in overcrowded and unsanitary cells and that this resulted in a violation of his constitutional rights. That is sufficient to allege a *Monell* claim.[24]

### 2. Inadequate Medical Care Claim

Separate from his triple-celling claim, Plaintiff alleges that Defendants were deliberately

---

liability may be imposed if the supervisor acts with the mental state necessary to establish the underlying constitutional tort") (citation omitted); *Thomas v. Adams*, 55 F. Supp. 3d 552, 568 (D.N.J. 2014) ("*Iqbal* did not change any aspect of substantive law. Nor did *Iqbal* create a liability exception for the defendants fortunate to hold supervisory positions.").

[21] *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. N.Y. City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)).

[22] *Id.* at 166 (citations omitted).

[23] *Lopez*, 2017 WL 2869495, at *3 (citing *Monell*, 436 U.S. at 658).

[24] *See id.* at *4 (finding that similar allegations established a *Monell* claim).

indifferent to his serious medical needs because they ignored his complaints about his back injuries and scabies and forced him to sleep in an overcrowded cell that exacerbated those conditions. Defendants do not explicitly address this claim.

Like Plaintiff's triple-celling claim, "[a] claim for inadequate medical care of a pre-trial detainee is analyzed under the Due Process Clause of the Fourteenth Amendment."[25] "In order to establish a violation of [a plaintiff's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[26] "A serious medical need includes one that has been 'diagnosed by a physician as requiring treatment.'"[27] "Deliberate indifference has been found where a prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended treatment."[28] "However, for a supervisor to be liable for a constitutional violation, he must have been 'personally involved, meaning through personal direction or actual knowledge and acquiescence.'"[29] Thus, Plaintiff "must allege specific facts that indicate the defendants knew of and disregarded the risk that his constitutional right to adequate medical treatment could be violated."[30]

Taken as true, Plaintiff's allegations give rise to a plausible inadequate medical care

---

[25] *Ortiz v. Nutter*, No. 15-4689, 2016 WL 8735709, at *3 (E.D. Pa. Oct. 14, 2016) (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987)).

[26] *Id.* (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F. 3d 575, 582 (3d Cir. 2003)).

[27] *Id.* at *4 (quoting *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)).

[28] *Id.* (citations and internal quotation marks omitted).

[29] *Id.* (quoting *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009)).

[30] *Id.* (citations omitted).

claim against Defendants Delaney and Farrell.[31] Plaintiff alleges that Delaney and Farrell ignored his requests for medical assistance related to his herniated disc and scabies and forced him to sleep in an unsanitary cell that aggravated both conditions. That is enough to allege deliberate indifference to a serious medical need.[32] Thus, Plaintiff may proceed with this claim against Delaney and Farrell.

### B. First Amendment Claim

Plaintiff also seeks leave to amend to assert a claim for First Amendment retaliation. This claim is nominally asserted against all Defendants, but Plaintiff's allegations only concern Delaney and Farrell. Plaintiff alleges that after he filed his grievances, Delaney and Farrell's subordinates retaliated against him by shuffling him between two-person and three-person cells in order to deter future complaints.[33] Defendants do not address Plaintiff's First Amendment claim.

"Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional."[34] "To state a claim for retaliation, a plaintiff must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of the prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor' in the decision to take that action."[35] The use of a prison grievance system qualifies as protected activity, Plaintiff's return to a three-person cell arguably constitutes an adverse action, and Plaintiff plausibly alleges that his repeated complaints were the cause of his

---

[31] As noted, because Corizon has yet to move to dismiss, the Court does not resolve the issue of whether Plaintiff has pleaded an inadequate medical care claim against Corizon.

[32] *See Allen v. Warden of Dauphin Ct. Jail*, No. 07-1720, 2008 WL 4452662, at *4 (M.D. Pa. Sept. 29, 2008) (denying motion to dismiss Eighth Amendment serious medical need claim where plaintiff alleged that his assignment to a bottom bunk aggravated his herniated disc).

[33] Doc. No. 53-1 (Proposed Third Amended Complaint) ¶¶ 27, 34.

[34] *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (citation and internal quotation marks omitted).

[35] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

9

confinement to a three-person cell.[36] Thus, Plaintiff will be granted leave to amend to assert a First Amendment retaliation claim against Delaney and Farrell only.[37]

### C. Conversion Claim

Finally, Plaintiff seeks leave to assert a state-law claim for conversion based on the loss of his personal property following his temporary transfer to Cumberland County Prison. Defendants fail to address this claim as well. "Under Pennsylvania law, the elements to the tort of conversion are: (1) deprivation of another's right of property in, or use or possession of, (2) a chattel, (3) without the owner's consent, and (4) without lawful justification."[38] Plaintiff claims that he was forced to place his property into storage, where it vanished due to Delaney's failure to establish an "item identification system."[39] Taken as true, these allegations are sufficient to state a claim against Delaney, but not against any other Defendant.[40]

### D. Other Pending Motions

The parties have filed four other motions, which the Court will address briefly. First, Plaintiff has filed a "Motion for Appointment of Special Counsel." Though this case was previously referred to the Prisoner Civil Rights Panel, and no Panel attorney agreed to represent

---

[36] *See, e.g.*, *Pepe v. Lamas*, 679 F. App'x 173, 175-76 (3d Cir. 2017) (concluding that plaintiff stated plausible First Amendment claim where he alleged that defendants removed him from his job in the prison kitchen in retaliation for filing a grievance).

[37] To the extent Plaintiff intends to assert a First Amendment claim against any other Defendants, it fails because there are no allegations that plausibly suggest any other Defendant retaliated against Plaintiff for filing his grievances.

[38] *Carter v. Morrison*, No. 06-3000, 2010 WL 701799, at *19 (E.D. Pa. Feb. 24, 2010) (citations and internal quotation marks omitted). To the extent Plaintiff also seeks to recover under the Fourth Amendment, this claim fails, as the Fourth Amendment provides inmates with no protections against the confiscation of their personal property. *See, e.g.*, *Tinsley v. Giorla*, No. 05-2777, 2008 WL 901697, at *10 (E.D. Pa. Apr. 1, 2008) (concluding that pre-trial detainee could not state claim under the Fourth Amendment for the loss of legal papers because "he did not have a reasonable expectation of privacy enabling him to invoke the protections of the Fourth Amendment when his legal papers were taken") (footnote omitted).

[39] Doc. No. 53-1 ¶¶ 23-25.

[40] *Cf. Bracey v. Price*, No. 09-1662, 2011 WL 2620358, at *4 (W.D. Pa. July 1, 2011) (denying motion to dismiss prisoner's conversion claim based on the alleged confiscation of his legal materials).

10

Plaintiff, the Court will again refer this case to the Panel in light of the fact that Plaintiff has been granted leave to amend. In the meantime, Plaintiff must represent himself *pro se* or retain counsel if he continues to pursue this case.

Second, Plaintiff has filed an "Omnibus Response and Clarification Motion." Though styled as a "motion," this appears to be a response in opposition to Defendants' motion to dismiss, and so it will be dismissed as moot.

Third, Plaintiff has filed a "Discovery Motion," which consists of a list of discovery requests. Defendants do not object to the substance of the requests, and have asked only that they be allowed to respond in accordance with the Federal Rules of Civil Procedure. Thus, the "motion" will be denied without prejudice, and Defendants shall respond to Plaintiff's discovery requests as required by the Federal Rules.

Finally, Defendants have filed a motion to depose Plaintiff, who has not responded. Because the discovery period is drawing to a close and Plaintiff's testimony will doubtless be necessary for dispositive motion briefing, Defendants' motion will be granted.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the Second Amended Complaint will be dismissed as moot, and Plaintiff will be granted leave to file the Third Amended Complaint, with the limitations set forth in this opinion. The other pending motions will be resolved as stated above. An appropriate order will follow.