# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID BURGOS** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 13-4894** |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |
| **Defendants.** | : | |
| | : | |

## <u>MEMORANDUM OPINION</u>

**Rufe, J.**                                                    **February 11, 2020**

Plaintiff David Burgos, who initially proceeded *pro se* but is now represented by counsel,
filed this civil action pursuant to 42 U.S.C. § 1983 and Pennsylvania law to recover damages for
injuries he suffered at the Curran-Fromhold Correctional Facility ("CFCF"). Burgos alleges
Fourteenth Amendment conditions-of-confinement claims against Defendants City of
Philadelphia, former Philadelphia Prison System Commissioner Louis Giorla, Warden John
Delaney, and Warden Michele Farrell ("City Defendants"); a Fourteenth Amendment inadequate
medical care claim and a First Amendment retaliation claim against Delaney and Farrell; a state-
law conversion claim against Delaney; and Fourteenth Amendment inadequate medical care
claims against Defendant Corizon Health, Inc. Both the City Defendants and Corizon have filed
motions for summary judgment. Burgos has filed a motion for sanctions based on Corizon's
30(b)(6) witnesses' inability to provide information on Burgos's medical records and treatment
while in detention. For the following reasons, the City Defendants' Motion for Summary
Judgment will be granted, Corizon's Motion for Summary Judgment will be granted in part and
denied in part, and Burgos's Motion for Sanctions will be granted.

# I.  FACTUAL BACKGROUND[1]

In 2012, Burgos injured his knees, back, and neck in a car accident. From the time of his accident until July 1, 2013, Burgos went to physical therapy for his injuries.[2] On July 4, 2013, Burgos began a six month period of incarceration at CFCF.[3]

Burgos alleges claims based on two separate issues with his confinement. First, he asserts that overcrowding and poor sanitization at CFCF caused him to contract scabies. While at CFCF, "a large portion of" his time was spent in a triple cell[4] (a cell meant for two prisoners but housing three due to overcrowding) where he "was only ever given the boat" which was a plastic mattress frame on the floor.[5] Burgos further contends that there were daily lockdowns which prevented his cells from being cleaned and did not allow him to shower.[6] Sleeping in the boat on the floor, near feces and urine, caused Burgos to contract scabies.[7] Second, he asserts that his prior injuries were not accommodated, causing him further injury. When he was not in a triple cell he was only assigned to a "top bunk."[8] Burgos alleges that he "re-injured [his] back and neck lifting [himself] up to, and descending from, a top bunk and sleeping in the plastic boat" and that he "reinjured [his] wrist pushing [himself] up from the plastic boat."[9]

---

[1] Besides the issue of whether Burgos properly exhausted his administrative remedies, Defendants largely appear not to dispute Burgos's factual assertions. Rather, the majority of Defendants' briefs argue that as a matter of law Burgos has failed to present sufficient evidence for his claims. Moreover, partly due to Corizon's failure to retain Burgos's medical records, the record in this case is decidedly sparse.

[2] *See* Statement of Stipulated Material Facts [Doc. No. 106-1] at 2.

[3] *See id.* at 1. During this time, Burgos had three temporary transfers

[4] Prison records indicate that Burgos was triple-celled for 89 days in total, with the longest consecutive period of time being 39 days. *See id.* at 3.

[5] Affidavit [Doc. No. 116] at 1.

[6] *See id.* at 2.

[7] Burgos Dep. [Doc. No. 110-6] at 30:21.

[8] Affidavit [Doc. No. 116] at 1.

[9] *See id.* at 2.

Burgos also asserts claims against Corizon Health, which contracted with the Philadelphia Prison System to provide medical services to inmates incarcerated at CFCF, asserting that he was not properly treated by Corizon. With regard to Burgos's back, wrist, and neck injuries, he asserts that he was only given Tylenol but that, although the Tylenol did not work, Corizon refused to have a doctor examine him or assign him to a bottom bunk.[10] According to Burgos, he still has "considerable pain in [his] back, wrist and neck from [his] injuries at CFCF" and he "currently walk[s] with a cane, wear[s] a wrist brace, and sleep[s] with a neck brace."[11]

With regard to his scabies, Corizon gave Burgos Motrin and cream, but refused to decontaminate his cell and bedding.[12] Burgos asserts that he only received appropriate treatment for his scabies during his temporary transfers to a state facility Cumberland County.[13] However, while he was at Cumberland, Burgos asserts that his property was twice lost or misplaced by prison officials at CFCF. Moreover, Burgos avers that he filed grievances complaining about the conditions of his confinement, the medical care he received, and the disappearance of his property but that prison officials retaliated against him by placing him back in triple cells.[14] Defendants assert that Burgos only filed two grievances and that those grievances were procedurally deficient.

---

[10] *See id.*

[11] *Id.* at 3.

[12] *See id.*

[13] Burgos Dep. at 22:14-22:23, 27:05-27:1; 79:07-80:06.

[14] Affidavit [Doc. No. 116] at 2.

## II.    LEGAL STANDARD

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[15] A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[17] A dispute is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[18]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[19] Further, a court may not weigh the evidence or make credibility determinations.[20] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[21] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[22] Therefore, if, after drawing all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[23]

---

[15] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[16] Fed. R. Civ. P. 56(a).

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[18] *Id.*

[19] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[20] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[22] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

[23] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

## III.    DISCUSSION

### A.  Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners exhaust all prison grievance procedures before suing in court.[24] The "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge."[25] The Third Circuit has explained that exhaustion requires "substantial compliance with the prison's grievance procedures."[26] "If there is no genuine dispute of material fact, then the exhaustion defense may be evaluated as a matter of law at summary judgment. If there is a genuine dispute of material fact related to exhaustion, then summary judgment is inappropriate[.]"[27]

The City Defendants assert that Burgos's purported grievances concerning the conditions of his confinement were defective because he grieved more than one issue at a time, which was not in compliance with the relevant policy; because his grievances do not address his back, neck, or wrist injuries and do not reference his request for bottom bunk status; and because he did not appeal them. Corizon also argues that Burgos's grievances were deficient because they did not explicitly name "Corizon."

The Third Circuit has explained that a "conflict between the Prison's records and [the prisoner's] deposition testimony" creates "a genuine issue of material fact" when the prisoner "sets forth specific facts" regarding whether they exhausted their claim.[28] Moreover, a prison "render[s] its administrative remedies unavailable . . . when it fail[s] to timely (by its own

---

[24] 42 U.S.C. §1997e(a).

[25] *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010).

[26] *Small v. Camden Cty.*, 728 F.3d 265, 272 (3d Cir. 2013) (internal quotation and citations omitted).

[27] *West v. Emig*, No. 18-3806, 2019 WL 5061417, at *2 (3d Cir. Oct. 9, 2019).

[28] *Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)).

procedural rules) respond to [the prisoner's] grievance[.]"[29]

In Burgos's sworn affidavit, he asserts that he filed "approximately 12 or 13 grievances."[30] In his deposition, Burgos testified that he filed grievances "based on subhuman living conditions" in his cell,[31] based on being forced to sleep on a mattress on the floor,[32] based on contracting scabies,[33] and based on sleeping in a top bunk and aggravating his neck and back injuries.[34] Therefore, according to Burgos's sworn testimony, there is a genuine dispute of material fact as to whether Burgos filed grievances based on the claims he is now pursuing.

Burgos further testified that he only appealed one of the grievances "because that was the only response that I ever got from all the grievances I filed."[35] He also testified that after not hearing back about his appeal he spoke to lieutenants and wrote request slips, but "they never responded back to nothing."[36] A prisoner cannot be expected to file appeals to grievances which were never ruled on.[37] Accordingly, there is a genuine dispute of material fact as to whether CFCF's appeal remedy was "available" to Burgos.[38]

Furthermore, although CFCF had a policy stating that "[a]n inmate may file multiple

---

[29] *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

[30] Affidavit [Doc. No. 116] at 2. Moreover, because "grievance records are only retained for 3 years" Defendants' argument that Burgos only filed two grievances is lacking in evidentiary support. City Defendants' Responses to Plaintiff's First Set of Requests for Production of Documents [Doc. No. 109-2] at 5. Defendants rely on testimony that the Lock and Key system only shows that Burgos filed two grievances. However, the Lock and Key system only shows which grievances were logged into Defendants' system—it does not account for grievances that were lost or destroyed after Burgos filed them. *See generally* Brittingham-Keys Dep. [Doc. No. 116-2].

[31] Burgos Dep. [Doc. No. 110-6] at 19:4-6.

[32] *See id.* at 30:2-5.

[33] *See id.* at 31:12-14.

[34] *See id.* at 28:1-7.

[35] *Id.* at 44:23-45:3.

[36] *Id.* at 46:22-47:5.

[37] *See Robinson*, 831 F.3d at 154.

[38] *Id.*

grievances, each on a different issue/problem, but only one issue/problem per grievance," fact issues remain as to whether all of Burgos's grievances contained multiple issues.[39] Burgos alleges that officials at CFCF threw out three carbon copy receipts of grievances that he filed.[40] Therefore, because of CFCF's policy to only retain grievances for three years, the Court is unable to conclude that those grievances contained multiple issues. CFCF does argue that the record contains some of Burgos's carbon copies of the grievances he filed[41]; however, the photocopies of the carbon copies are not legible, and the Court is unable to determine with certainty that they contain multiple issues. Therefore, this issue cannot be resolved before trial.

Moreover, Burgos's failure to name Corizon in his grievances does not defeat his claims. "The PLRA itself does not have a 'name all defendants' requirement."[42] "However, prisoners are required to complete the administrative review process in accordance with rules that are defined by the prison grievance process."[43] The cases Corizon cites for its argument are all based on a rule governing the Pennsylvania Department of Corrections grievance procedure which requires prisoners to name individuals involved in the events; there is no evidence in the record that CFCF, a City of Philadelphia facility, also had this requirement as part of its grievance procedure. Therefore, summary judgment on the basis of exhaustion will be denied.

### B. The City Defendants

In addition to their grievance arguments, the City Defendants argue that summary judgment should be granted because Burgos has failed to establish a constitutional violation

---

[39] Exhibit P [Doc. No. 110-16] at 3.

[40] Affidavit [Doc. No. 116] at 2.

[41] Exhibits N & O [Doc. Nos. 110-15 & 110-16].

[42] *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 217 (2007)).

[43] *Id.* (citing *Jones*, 549 U.S. at 218).

under either the First or Fourteenth Amendments, because Burgos has failed to establish sufficient evidence of personal involvement of the individual City Defendants and sufficient evidence of an unconstitutional policy or custom by the City, and because his injuries were *de minimis*.

The Court holds that as a matter of law 1) Burgos has failed to establish a First Amendment violation; 2) Burgos has failed to establish that the individual City Defendants were personally involved in the alleged Fourteenth Amendment violations; and 3) Burgos has failed to present sufficient evidence that the City can be held liable based on a policy or custom.

### 1. First Amendment Claim

Burgos asserts that he filed three of his grievances on September 20, 2013, October 22, 2013, and November 15, 2013, and that the City Defendants violated his First Amendment rights by triple-celling him in retaliation.[44] Records show that Burgos was sent into triple cells on September 16, 2013, October 21, 2013, and November 14, 2013—before he alleged that he filed those grievances. Burgos therefore explains that before filing the grievances, he tried to informally resolve his problems, and that his informal efforts prompted the retaliation.[45]

"To establish a claim for retaliation contrary to the First Amendment, a plaintiff must show: (1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action."[46] Filing grievances is constitutionally protected

---

[44] Plaintiff's Brief in Opposition to City Defendants' Motion for Summary Judgment [Doc. No. 107] at 16.

[45] *See id.* Moreover, Burgos states that written grievances were supposed to be confidential and could only be disclosed if authorized by the Commissioner, but that the grievance coordinator and other staff would hand out the grievance form to officers at CFCF. *See id.* at 17.

[46] *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

conduct.[47] Being housed in a triple cell may constitute an adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."[48]

"Because motivation is almost never subject to proof by direct evidence, [Burgos] must rely on circumstantial evidence to prove a retaliatory motive. He can satisfy his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."[49] However, beyond his testimony that he attempted to informally resolve his problems sometime before he was moved into a triple cell, Burgos "has not offered other evidence in support of [his] retaliation claim."[50] Drawing all inferences in Burgos's favor only establishes that some prison officers were aware of his informal complaints before his transfer, but "there is no evidence to suggest that an intent to retaliate against him caused or contributed to" his transfer to a triple cell.[51] Therefore, Burgos's First Amendment claims will be dismissed.

### 2. Personal Involvement of the Individual City Defendants[52]

Burgos alleges that Giorla, who was the Commissioner of the Philadelphia Prison System during his detention, would tour CFCF and "likely observed the unsanitary conditions to which

---

[47] *See Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981); *see also Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (explaining that when prison officials are aware that the prisoner intends to file a grievance, that conduct is constitutionally protected even when the alleged retaliatory conduct occurs before the prisoner files the grievance).

[48] *Brightwell*, 637 F.3d at 194 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)); *see also Watson*, 834 F.3d at 422 (explaining that "a disadvantageous change in housing assignment" is an adverse action).

[49] *Watson*, 834 F.3d at 422.

[50] *Estate of Smith v. Marasco*, 318 F.3d 497, 513 (3d Cir. 2003).

[51] *Id.*

[52] Because Delaney was no longer the Warden of CFCF when Burgos was detained there, the claims against him will be dismissed. *See* Statement of Stipulated Material Facts [Doc. No. 106-1] at 1.

he was subjected."[53] Burgos further alleges that Giorla implemented a procedural directive that "all reasonable efforts [would] be made by PPS to insure that [inmates] receive all regular services in a timely manner and that [inmates] are removed to a double cell as quickly as reasonably feasible" but that he failed to implement policies to track and enforce this directive.[54]

Burgos also asserts that Farrell, who was the Warden at CFCF during the period of his detention, "toured the cell blocks or individual units in which plaintiff was confined" and, "[a]s a result Warden Farrell was aware of the unsanitary conditions to which plaintiff was subjected."[55]

"It is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct."[56] "Such personal involvement may be established [either] by alleging that the supervisor 'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"[57] or by alleging that the supervisor "established a policy, practice, or custom that directly caused the harms that [the plaintiff] allegedly endured."[58] Burgos cannot avoid summary judgment on either theory.

First, Burgos appears to argue that Giorla and Farrell had knowledge of and acquiesced in their subordinates' decision to subject him to unconstitutional conditions of confinement. "In an

---

[53] Plaintiff's Brief in Opposition to City Defendants' Motion for Summary Judgment [Doc. No. 107] at 18. Because Burgos's First Amendment claim is dismissed, the Court will not analyze the alleged personal involvement of the individual defendants in failing to ensure that grievances remain confidential.

[54] *Id.*

[55] *Id.*

[56] *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 71 (3d Cir. 2011).

[57] *Williams v. Papi*, 714 F. App'x 128, 133 (3d Cir. 2017) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

[58] *Phillips v. Northampton Co., P.A.*, 687 F. App'x 129, 131 (3d Cir. 2017); *see also A.M. ex rel. J.M.K.*, 372 F.3d at 586 (citation omitted).

acquiescence context like this one, a plaintiff must show '(1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval.'"[59] Moreover, "a plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case."[60] Burgos has only pointed to evidence showing that both Giorla and Farrell toured CFCF. However, there is no concrete evidence supporting his assertion that they knew about the specific unsanitary conditions of Burgos's cell, or that they had knowledge of a prior pattern of similar incidents.[61] Therefore, to the extent that Burgos is relying on this theory of supervisory liability, Giorla and Farrell "are entitled to summary judgement as a matter of law for Plaintiff's failure to establish their personal involvement in the denial of a constitutional right."[62]

Second, Burgos also appears to argue that Giorla's procedural directive was deficient because he failed to implement tracking and enforcement policies. However, "to hold a supervisor liable . . . for their deficient policies . . . the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury

---

[59] *Bernard v. E. Stroudsburg Univ.*, 700 F. App'x 159, 163 (3d Cir. 2017) (quoting *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000)).

[60] *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

[61] *See Parkell v. Danberg*, 833 F.3d 313, 332 (3d Cir. 2016); *see also Camps v. Nutter*, No. 14-01498, 2019 WL 1227709, at *5 (E.D. Pa. Mar. 14, 2019). Although there is evidence that Giorla and Farrell knew that prisoners were being triple celled, there is no evidence that Giorla and Farrell knew about the specific conditions in Burgos's cell that he alleges were caused by the triple celling.

[62] *Acosta v. DeParlos*, No. 3-14-1564, 2017 WL 4340955, at *5 (M.D. Pa. Sept. 29, 2017).

resulted from the policy or practice."[63] Burgos has not identified a specific policy that Giorla failed to employ; rather, he only asserts that general tracking and enforcement policies were needed. There is also no evidence that the existing directive created an unreasonable risk of a constitutional injury. Nor is there any indication that Giorla was aware of, and indifferent to, any risk of the alleged deficient policy. Moreover, Burgos has presented no evidence showing that additional policies tracking and enforcing the directive would have diminished Burgos's time spent in a triple cell in the context of the overcrowded prison. Therefore, Giorla and Farrell are entitled to summary judgment.

### 3. The City's *Monell* Liability

"[A] municipality cannot be held liable under § 1983 for the constitutional torts of its employees by virtue of respondeat superior."[64] A government entity can, however, be liable in "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983":

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.[65]

---

[63] *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

[64] *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (citing *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 694 (1978)).

[65] *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotations and citations omitted).

Burgos asserts that the City is liable because "[i]n addition to the policy violations discussed in the above sections, the City failed to institute a scabies policy, which resulted in plaintiff contracting scabies and not receiving adequate medical care."[66] As an initial matter, Burgos cannot expect the Court to identify the "policy violations" he is referring to in other parts of his brief, determine under which theory of liability Burgos intends to assert each claim, and make his arguments for him.[67]

With regard to the City's failure to adopt a scabies policy, Burgos quotes the Centers for Disease Control and Prevention's ("CDC") advice that "[s]cabies can spread easily under crowded conditions where close body and skin contact is common" and "[i]nstitutions such as nursing homes, extended-care facilities, and prisons are often sites of scabies outbreaks."[68] However, Burgos has not presented any evidence showing that the need to implement a scabies policy was obvious, such as evidence of a prior scabies outbreak.[69] Therefore, summary

---

[66] Plaintiff's Brief in Opposition to City Defendants' Motion for Summary Judgment [Doc. No. 107] at 19.

[67] *See DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012) (citations omitted). To the extent that Burgos's claim is based on the City's violation of its internal policy not to triple cell prisoners for more than 30 consecutive days, as his Sur Reply appears to indicate, "the issue is not whether [the City] violated internal prison policies but whether they violated the Constitution." *Bornstein v. Monmouth Cty. Sheriff's Office*, 658 F. App'x 663, 668 (3d Cir. 2016) (citing *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992)). The City cannot be held liable under §1983 for violating an internal policy that goes beyond what federal law requires.

[68] Plaintiff's Brief in Opposition to City Defendants' Motion for Summary Judgment [Doc. No. 107] at 19–20 (quoting Scabies – Epidemiology & Risk Factors, Centers for Disease Control, https://www.cdc.gov/parasites/scabies/epi html).

[69] Burgos argues that he requested that the City provide him with documentation on how "many complaints of scabies [it] receive[d] at CFCF between July 4, 2013 and January 8, 2014" but that the City responded that: "Defendants object to this request as overly burdensome and not proportional to the needs of this case, to the extent this information could be obtained by reviewing individual medical records. Without waiving these objections, Defendants are not in possession of information responsive to this request, and scabies is not a medical condition that is tracked in this manner." City Defendants' Answers to Plaintiff's First Set of Interrogatories [Doc. No. 109-2] at 2. Therefore, Burgos argues that he should not be penalized for his failure to demonstrate that the City's need to implement a scabies policy was obvious. *See* Plaintiff's Sur Reply in Opposition to City Defendants' Motion for Summary Judgment [Doc. No. 115] at 4. "However, because [Burgos] did not file a motion to compel with respect to this discovery . . . [he] waived the issue." *Johnson v. Pub. Servs. Enter. Grp.*, 529 F. App'x 188, 192 (3d Cir. 2013); *see also Miller v. Acands, Inc.*, No. 92-00100, 2011 WL 5505429, at *1 (E.D. Pa. June 23, 2011) ("Rather, since Defendant did not file a motion to compel Plaintiff to answer this interrogatory and since discovery is closed, Defendant cannot now claim relief on the grounds of this discovery deficiency."). The Court notes that in Burgos's

13

judgment will be granted on this claim.[70]

### 4. State Law Conversion Claim

Burgos asserts a state law conversion claim based on his allegation that, when he was transferred from CFCF to Cumberland County, his property was lost or misplaced.[71] However, "[f]ederal courts are courts of limited jurisdiction"[72] and "[u]nder 28 U.S.C. § 1367, 'a prerequisite to the federal court's exercise of pendent jurisdiction over a plaintiff's state law claims is that at least one claim based on the court's original diversity or federal question jurisdiction is before the court.'"[73] "It is well established that in an action with both federal and state claims, 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'"[74] As no federal claims remain against the City Defendants, and there are no remaining claims that "derive from a common nucleus of operative fact," the pendent state law claim will be dismissed without prejudice.[75]

Motion for Sanctions (filed against Corizon), he only raised the lack of production of a scabies policy, not of information relating to any prior outbreaks.

[70] *Vargas v. City of Philadelphia*, No. 11-2639, 2013 WL 6077160, at *13 (E.D. Pa. Nov. 18, 2013), *aff'd*, 783 F.3d 962 (3d Cir. 2015)). The Court notes the distinction between the claims against the City and those against Corizon. The claim against the City is based on its failure to adopt a scabies-specific policy before Burgos contracted the disease. However, Burgos has not presented evidence demonstrating that there was enough reason for the City to be aware that a scabies policy was necessary at that time. The claim against Corizon is based on its conduct once Burgos presented with scabies. At this time, the need to institute proper treatment policies was obvious.

[71] Plaintiff's Brief in Opposition to City Defendants' Motion for Summary Judgment [Doc. No. 107] at 21–22.

[72] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

[73] *Fleming v. Warren*, No. 19-2926, 2019 WL 5086962, at *6 (E.D. Pa. Oct. 10, 2019) (citing *Polite v. Rendell*, No. 08-5329, 2010 WL 1254334, at *4 (E.D. Pa. Apr. 1, 2010)).

[74] *Chernavsky v. Twp. of Holmdel Police Dep't*, 136 F. App'x 507, 511 (3d Cir. 2005) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (codified by 28 U.S.C. § 1367(c)(3) (2004)); *see also Byrd v. Shannon*, 715 F.3d 117, 128 (3d Cir. 2013); *Rendell*, 2010 WL 1254334, at *4 (quoting 28 U.S.C. § 1367(c)(3)) ("When 'the district court has dismissed all claims over which it has original jurisdiction,' the district court has the express authority to decline to exercise supplemental jurisdiction over any related state law claims.").

[75] *Gibbs*, 383 U.S. at 725; *see also Kis v. Cty. of Schuylkill*, 866 F. Supp. 1462, 1480 (E.D. Pa. 1994); *La Plant v. Frazier*, 564 F. Supp. 1095, 1098 (E.D. Pa. 1983) (citing *Aldinger v. Howard*, 427 U.S. 1 (1976) (declining to exercise jurisdiction over state law claims against defendants who no longer had federal claims even though there were still federal claims against another defendant); *Lopuszanski v. Fabey*, 560 F. Supp. 3, 5 (E.D. Pa. 1982) (same).

## C. Corizon

"Section 1983, enacted as part of the Civil Rights Act of 1871, establishes a federal remedy against a person who, acting under color of state law, deprives another of constitutional rights."[76] The Constitution requires that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"[77] Therefore, the Supreme Court has established that prison officials violate the Constitution by "intentionally denying or delaying access to medical care."[78]

"In order to sustain this constitutional claim under 42 U.S.C. § 1983, a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'"[79] Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law."[80] To act with deliberate indifference is to "recklessly disregard a

---

Moreover, retaining jurisdiction "would not be in the interest of judicial economy and fairness to the litigants." *Kis,* 866 F. Supp. at 1480.

[76] *Burella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007) (citations omitted). Corizon does not dispute that it was acting under color of state law. Therefore, the Court's inquiry is limited to determining whether Burgos was deprived of a constitutional right.

[77] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).

[78] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).

[79] *Id.* (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). Typically, denial-of-medical-care claims are asserted under the Eighth Amendment's prohibition on cruel and unusual punishment. *See id.* However, because Burgos was a pretrial detainee, his "claim should be evaluated under the Due Process Clause of the Fourteenth Amendment, as opposed to the Eighth Amendment." *Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (citing *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005)). Nevertheless, because "the Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner," *Natale*, 318 F.3d at 581 (citation and internal quotation omitted), the Court will evaluate Burgos's § 1983 claims "under the same standard used to evaluate similar claims brought under the Eighth Amendment." *Moore v. Luffey*, 767 F. App'x 335, 340 (citing *Natale*, 318 F.3d at 581-82); *see also Edwards*, 663 F. App'x at 135.

[80] *Natale*, 318 F.3d at 582 (quoting *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)).

substantial risk of serious harm."[81] "[F]inding a prison official liable for violating a prisoner's Eighth Amendment rights requires proof that the official 'knows of and disregards an excessive risk to inmate health or safety.'"[82] In addition, "to survive summary judgment . . . a plaintiff is required to produce sufficient evidence of . . . causation."[83]

Corizon asserts that it is entitled to summary judgment on all of Burgos's claims because Burgos has failed to present evidence to support his claim of entity liability. Corizon also argues that it is entitled to summary judgment on Burgos's claim of inadequate medical care based on the scabies he contracted because Burgos failed to present expert witness testimony on the issues of deliberate indifference and causation.

### 1. *Monell* Liability

Burgos bases his claim for entity liability against Corizon on a failure to act theory,[84] arguing that "there are numerous examples of Corizon turning a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights."[85] Burgos asserts that:

- "Corizon failed to institute policies to decontaminate cells of infectious conditions like scabies."
- "Corizon failed to institute policies that recommended bottom bunk status to inmates who needed them due to back injuries."

---

[81] *Baker v. Younkin*, 529 F. App'x 114, 115 (3d Cir. 2013) (quoting *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009)).

[82] *Natale*, 318 F.3d at 582 (quoting *Farmer*, 511 U.S. at 837); *see also Gunter v. Twp. of Lumberton*, 535 F. App'x 144, 149 (3d Cir. 2013).

[83] *Davis v. Williams*, 354 F. App'x 603, 605–06 (3d Cir. 2009) (quoting *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997)); *see also Smith v. Gransden*, 553 F. App'x 173, 177 (3d Cir. 2014) (citing *Miller v. City of Phila.*, 174 F.3d 368, 374 n. 5 (3d Cir. 1999)) (explaining that "a plaintiff must show . . . a causal connection between the indifference and the plaintiff's injury."); *White*, 514 F. App'x at 261 ("Liability may be established only if two conditions (in addition to causation) are met . . .").

[84] *Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) (explaining that *Monell* applies to private corporations alleged to be acting under the color of state law).

[85] Plaintiff's Brief in Opposition to Corizon's Motion for Summary Judgment [Doc. No. 108] at 14 (citing *Natale*, 318 F.3d at 584).

- "Corizon failed to institute policies to provide access to care to inmates, like plaintiff, who needed medical attention, but were confined in their cells due to constant lockdowns."[86]
- "Corizon failed to institute policies to adequately evaluate[] inmates' pre-existing conditions upon intake."
- "Corizon repeatedly denied reasonable requests from plaintiff to provide him medical care."[87]

To survive summary judgment on a failure to act theory, there must be disputed facts as to whether a Corizon "policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."[88] "Only in a narrow set of circumstances can the failure to adopt a policy be found so obvious that it can properly be characterized as deliberate indifference to the constitutional rights of the persons with whom a municipality's employees or agents come into contact."[89]

### a. Corizon's alleged failure to institute cell decontamination policies

Burgos asserts that the CDC, which Corizon acknowledges is a "preeminent entity" in the relevant field, recommends that scabies should be treated with both prescription cream and

---

[86] This claim appears to be raised for the first time in Plaintiff's Brief in Opposition to Corizon's Motion for Summary Judgment. However, Burgos "cannot raise a new claim in [his] brief that [he] has not already pleaded." *Jefferies v. Ameriquest Mortg. Co.*, 543 F. Supp. 2d 368, 385 (E.D. Pa. 2008) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 499 (3d Cir. 1997)).

[87] Plaintiff's Brief in Opposition to Corizon's Motion for Summary Judgment [Doc. No. 108] at 14.

[88] *Natale*, 318 F.3d at 584 (internal quotations and citations omitted). Corizon also argues that Burgos has failed to produce sufficient evidence for this *Monell* claim because he has not identified a specific policymaker. However, that requirement is only applicable for a *Monell* claim based on an entity's affirmative policy—in such a case, the entity can only be liable if the plaintiff identifies the policymaker who promulgated the policy. However, a plaintiff asserting that an entity *failed* to adopt a policy is not required to identify which specific policymaker should have promulgated a proper policy. *See Parkell*, 833 F.3d at 338.

[89] *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 525 (M.D. Pa. 2017), *aff'd in part, vacated in part sub nom. Ponzini v. Monroe Cty.*, 789 F. App'x 313 (3d Cir. 2019) (citing *Natale*, 318 F.3d at 575).

through decontamination of bedding and clothing.[90] Corizon concedes that it did not have a scabies policy,[91] and does not dispute that it did not decontaminate Burgos's bedding and clothing.[92]

"A reasonable jury could conclude from the evidence that [Corizon] knew about [Burgos's scabies infection] but was unprepared to take the steps necessary to address those issues."[93] Therefore, "a genuine issue of material fact exists as to whether [Corizon's] failure to establish policies" to properly address scabies infections "amounted to deliberate indifference."[94]

b. Corizon's alleged failure to institute policies that recommended bottom bunk status to inmates with to back injuries

Burgos asserts that the failure to adopt a policy to assign inmates with back injuries to bottom bunks violated his constitutional rights. While the record shows that Corizon did not have such a policy in place,[95] Burgos has not presented any evidence showing that it is so obvious that all people with back injuries cannot climb a short ladder such that the failure to adopt a policy to that effect constitutes deliberate indifference. Therefore, summary judgment will be granted on this claim.

c. Corizon's alleged failure to institute policies to adequately evaluate inmates' pre-existing conditions upon intake

Burgos alleges that Corizon failed to adopt a policy to evaluate inmates' preexisting

---

[90] Plaintiff's Sur Reply in Opposition to Corizon's Motion for Summary Judgment [Doc. No. 117] at 8.

[91] *See* Corizon's Memorandum in Response to Plaintiff's Motion for Sanctions [Doc. No. 103-2] at 9.

[92] Corizon's Reply in Support of Motion for Summary Judgment [Doc. No. 113] at 6–9.

[93] *A.M. ex rel. J.M.K.*, 372 F.3d at 584–85 (explaining that the unrebutted evidence of inappropriate treatment demonstrated the insufficiency of the policy).

[94] *Id.*

[95] Kalu Dep. [Doc. No. 109-1] at 26:09-26:11.

conditions upon intake. While the Court agrees that the need for such a policy is obvious,[96] Burgos's own testimony belies his claim that Corizon did not have such a policy. In his deposition, Burgos explained that "[w]hen you first come through the medical you've got to do an evaluation, I guess, when you first come in, and I – I explained to them about my injuries and stuff, and I actually sent them a copy of my medical records from the street, like my injuries[.]"[97] Similarly, in his sworn affidavit, Burgos stated that: "Upon intake at CFCF, I informed staff that I had back, neck, and wrist injuries and signed authorization documents enabling CFCF and Corizon to obtain records from Premier Healthcare and Rehabilitation, Inc."[98] Therefore, because there is no genuinely disputed issue of fact regarding whether Corizon had a policy to evaluate inmates' preexisting conditions upon intake, summary judgment on this claim will be granted.[99]

  d. Corizon's alleged repeated denials of requests from Burgos to provide him medical care

Corizon can only be held liable under § 1983 based on policy or custom.[100] Burgos has asserted that his claims against Corizon stem from its failures to adopt specific policies. However, because Burgos has not asserted any policy or lack thereof in relation to this claim[101]—the claim appears to be wholly based on Corizon's treatment of Burgos only—

---

[96] *Natale*, 318 F.3d at 585 (ruling that "[a] reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs.").

[97] Burgos Dep. [Doc. No. 110-6] at 37:17-22; *see also id.* at 31:22–32:2 (Burgos explaining that when he was arrested and arrived at CFCF he "went to medical" and "gave them a copy of my medical records telling them I had these injuries.").

[98] Affidavit [Doc. No. 116] at 1.

[99] Moreover, this claim will also be dismissed because it appears that this claim was raised for the first time in Plaintiff's Brief in Opposition to Corizon's Motion for Summary Judgment. *See Jefferies*, 543 F. Supp. 2d at 385 (citing *Krouse*, 126 F.3d at 499).

[100] *Defreitas*, 525 F. App'x at 176.

[101] *See Rivera v. Chester Cty.*, No. 15-5609, 2017 WL 1150622, at *13 (E.D. Pa. Mar. 28, 2017).

summary judgment will be granted.[102]

      2.   <u>Whether Burgos Was Required to Submit Expert Testimony on The Issue of Deliberate Indifference</u>

The Third Circuit has held that "medical expert testimony may be necessary to establish deliberate indifference in an adequacy of care claim where, as laymen, the jury would not be in a position to determine that the particular treatment or diagnosis fell below a professional standard of care."[103] However, "expert testimony 'is not necessarily required' where other forms of extrinsic proof may suffice."[104] Extrinsic proof of the quality of medical care may include a "training manual, photograph, or medical records."[105]

Burgos has presented extrinsic evidence establishing that Corizon's treatment of his scabies was deficient. The CDC report presented by Burgos demonstrates that decontamination is necessary to treat scabies infections. Therefore, a reasonable jury could find, without needing expert testimony, that Corizon's failure to adopt a policy requiring decontamination for prisoners with scabies constituted deliberate indifference.

      3.   <u>Whether Burgos Was Required to Submit Expert Testimony on The Issue of Causation</u>

"It is axiomatic that [a] § 1983 action, like its state tort analogs, employs the principles of proximate causation."[106] "To establish the necessary causation, a plaintiff must demonstrate a

---

[102] The Court notes that such a claim would typically be asserted against individual prison officials pursuant to § 1983. However, the Court granted leave to counsel to file a Fourth Amended Complaint, but counsel chose to rely on Burgos's *pro se* complaint.

[103] *Pearson*, 850 F.3d at 536.

[104] *Id.* (quoting *Brightwell*, 637 F.3d at 194 n.8).

[105] *Id.*

[106] *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (citations and quotation omitted); *see also Pagan-Gonzalez v. Moreno*, 919 F.3d 582, 615 (1st Cir. 2019) (Barron, J., concurring) (citations omitted) ("[I]n all § 1983 cases and Bivens actions, plaintiffs must show some causation between the defendant's conduct, the constitutional violation, and the plaintiff's injury.").

'plausible nexus' or 'affirmative link' between the [defendant's action] and the specific deprivation of constitutional rights at issue."[107] "Although the issue of proximate causation is typically determined by the factfinder, this issue may be addressed as a matter of law where the outcome is clear or when highly extraordinary events or conduct takes place."[108]

Corizon argues that "Burgos' contention regarding Corizon relates to a sophisticated medical condition; problems with the treatment and diagnosis of scabies, skin diseases and pain."[109] However, a "natural and probable outcome" of not having an effective scabies policy is the failure of a prisoner's scabies to heal.[110] Therefore, Burgos has presented sufficient evidence of causation.

### D. Motion for Sanctions

As explained above, Corizon lost or destroyed Burgos's medical records. According to Corizon, in June 2016, it "adopted an electronic medical record,"[111] and although Burgos filed his original Complaint in 2013,[112] Corizon apparently failed to retain medical records from

---

[107] *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)); *see also Ramos-Vazquez v. PrimeCare Med., Inc.*, No. 09-00364, 2010 WL 3855546, at *7 (E.D. Pa. Sept. 30, 2010).

[108] *Brandt v. Burns*, 441 F. App'x 924, 927 (3d Cir. 2011) (citations omitted); *see also Tallman v. Barnegat Bd. of Educ.*, 43 F. App'x 490, 498–99 (3d Cir. 2002) (citations omitted) ("Although the question of proximate cause must often be submitted to the trier of fact, summary judgment is proper if the record cannot reasonably support a finding of proximate cause, and in prior § 1983 cases, [the Third Circuit has] upheld summary judgment on this basis.").

[109] Corizon's Reply in Support of Motion for Summary Judgment [Doc. No. 113] at 4.

[110] *Holt v. Navarro*, 932 A.2d 915, 921 (Pa. 2007) (citations omitted); *see also Barnes v. Anderson*, 202 F.3d 150, 158–59 (2d Cir. 1999) (stating that "state tort analogs" bear on proximate cause under § 1983 even though the issue involves federal law); *Piazza v. Lakkis*, No. 3:11-2130, 2013 WL 424724, at *3 (M.D. Pa. Feb. 4, 2013) (quoting *Milesco v. Norfolk S. Corp.*, No. 1:09-1233, 2010 WL 55331 (M.D.Pa. Jan. 5, 2010)) (applying Pennsylvania's proximate cause standard in a §1983 context).

[111] Corizon's Memorandum in Response to Plaintiff's Motion for Sanctions [Doc. No. 103-2] at 1.

[112] Doc. No. 1. Although Burgos does not name Corizon until his Second Amended Complaint, which was filed in 2017, his First Amended Complaint, filed in 2014, specifically references his scabies and alleged a claim for failure to provide adequate medical care. *See* Doc. No. 21.

before 2016.[113] During discovery, Corizon designated two witnesses—Jessica Brett and Dr. Eke Kalu—as Rule 30(b)(6) witnesses.[114] After neither witness was prepared to testify about the medical care Burgos received, Burgos moved the Court "to sanction Defendant Corizon for its failure to produce a properly-prepared Rule 30(b)(6) corporate designee."[115] Specifically, Burgos has requested that the Court "order Corizon to provide a properly prepared corporate designee, an extension of the discovery deadline solely so plaintiff may obtain any outstanding discover[y] from Corizon, and that plaintiff shall recover costs associated with its deposition of Corizon's designee and with its Motion for Sanctions."[116]

The Third Circuit has held that:

> In reality if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it. Indeed, we believe that the purpose behind Rule 30(b)(6) undoubtedly is frustrated in the situation in which a corporate party produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf.[117]

Such a situation "is sanctionable under Rule 37(d)"[118] which allows a court to sanction a party with "any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."[119] These possible sanctions include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated

---

[113] Corizon's Memorandum in Response to Plaintiff's Motion for Sanctions [Doc. No. 103-2] at 1, 10 ("Corizon was the medical vendor for the PPS. Burgos' medical record would have been in paper format. In June 2016, Corizon adopted an electronic medical record . . . the medical records . . . cannot be located.").

[114] *See id.* at 3.

[115] Plaintiff's Motion for Sanctions Against Corizon [Doc. No. 100] at ECF 5 of 12.

[116] Memorandum in Support of Plaintiff's Motion for Sanctions [Doc. No. 100] at ECF 11 of 12.

[117] *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000).

[118] *Id.* (citation omitted); *see also Wartluft v. Milton Hershey Sch. & Sch. Tr.*, No. 16-2145, 2017 WL 4698102, at *6 (M.D. Pa. Oct. 19, 2017) ("When this occurs . . . the court has broad discretion in framing a remedy for a violation of [Rule] 30(b)(6)'s obligation to provide an informed corporate designee[.]").

[119] Fed. R. Civ. P. 37(d)(3).

claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part; [and]

(vi) rendering a default judgment against the disobedient party.[120]

Rule 37(d) also states that "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."[121]

Corizon's Rule 30(b)(6) witnesses should have been prepared to discuss Burgos's medical records and the treatment he received at CFCF.[122] Corizon's failure to retain medical records when switching to an electronic system—especially considering Burgos's pending lawsuit—is inexcusable. Therefore, relief pending a hearing will be granted. Sanctions to be considered include those in Rule 37(b)(2)(A)(i)-(vi) and Rule 37(d).[123]

## IV.    CONCLUSION

For the foregoing reasons, the Court grants the City Defendants' Motion for Summary Judgment, grants in part and denies in part Corizon's Motion for Summary Judgment, and grants Burgos's Motion for Sanctions. An appropriate Order follows.

---

[120] Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

[121] *Id.*

[122] *See Black Horse*, 228 F.3d at 304.

[123] However, Burgos's requested sanctions of ordering "Corizon to provide a properly prepared corporate designee" and extending "the discovery deadline solely so plaintiff may obtain any outstanding discover[y] from Corizon" will not be granted because Corizon has stated that it has "produced all of the documents in its possession" and does not have anyone who can testify at a deposition about Burgos's medical records. Corizon's Memorandum in Response to Plaintiff's Motion for Sanctions [Doc. No. 103-2] at 1. Therefore, it would be futile for the Court to provide those forms of relief.